IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DARRELL KIMBROUGH, MSN, FNP-C, | § | |
| MARY BENARD, MSN, FNP-C, and | § | |
| TINA SPOHN-LEDFORD, MSN, FNP-C, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:18-CV-82-Z-BR |
| | § | |
| NAEEM KHAN, M.D. and | § | |
| AMARILLO URGENT CARE, LLC, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
TO DENY IN PART AND DENY AS MOOT IN PART
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Darrell Kimbrough, MSN, FNP-C ("Kimbrough"), Mary Benard, MSN, FNP-C ("Benard"), and Tina Spohn-Ledford, MSN, FNP-C's ("Spohn-Ledford") (collectively "Plaintiffs") Motion for Partial Summary Judgment. (ECF 86). Plaintiffs also filed a Brief and Appendix in support of their motion. (ECF 87–91). Naeem Khan, M.D. ("Dr. Khan") and Amarillo Urgent Care, LLC ("AUC") (collectively "Defendants") filed a Response and an Appendix.[1] (ECF 97–98). Plaintiffs filed a Reply. (ECF 102).

Plaintiffs seek summary judgment on their claims for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"). (ECF 86 at 1; *see* ECF 106 at 7–8; ECF 107 at 7–8). For the reasons discussed below, the undersigned United States Magistrate Judge

---

[1] As is discussed below, Defendants' Appendix in support of their Response to Plaintiffs' Motion for Partial Summary Judgment contains numerous documents, including one entitled "Defendants' Objections to Plaintiffs' Evidence in Support of Plaintiffs' Motion for Partial Summary Judgment." (ECF 98 at 377–81). Plaintiffs filed a Response to these Objections. (ECF 101).

recommends the Motion for Partial Summary Judgment be DENIED as to Plaintiffs' claims under the FLSA.

Additionally, Plaintiffs seek summary judgment on all of Defendants' counterclaims. (*Id.*). However, shortly after Plaintiffs filed their Motion for Partial Summary Judgment, the United States District Judge granted Plaintiffs' Motion to Dismiss Defendants' Counterclaims Under Rules 12(b)(1) and 12(b)(6) and thereby dismissed all of Defendants' counterclaims against Plaintiffs. (ECF 92 at 36; *see* ECF 67). Accordingly, the undersigned recommends Plaintiffs' Motion for Partial Summary Judgment be DENIED AS MOOT as to Defendants' counterclaims.[2]

## I.    BACKGROUND

On April 27, 2018, Kimbrough filed his Original Complaint. (ECF 1). Kimbrough contends that he worked as a nurse practitioner at AUC from February 1, 2017 until he was constructively discharged on January 27, 2018. (*Id.* at 3–4). Kimbrough alleges multiple causes of action against Defendants, including unpaid overtime wages and retaliation under the FLSA, defamation, tortious interference with existing contract, and fraudulent misrepresentation. (*Id.* at 1, 6–10). Defendants filed an Answer to Kimbrough's Complaint on June 8, 2018 (ECF 7), a First Amended Answer on May 9, 2019 (ECF 28), and a Second Amended Answer[3] on October 23, 2019 (ECF 60). Kimbrough also filed a First Supplemental Complaint[4] on May 27, 2020.

---

[2] In their Reply, Plaintiffs acknowledge that their Motion for Partial Summary Judgment with respect to Defendants' counterclaims is now moot. (ECF 102 at 1).

[3] Defendants incorrectly titled their answer as "Defendants' *First* Amended Answer to Darrell Kimbrough, MSN, FNP-C's Original Complaint." (ECF 60) (emphasis added).

[4] Kimbrough's First Supplemental Complaint is nearly identical to Kimbrough's Original Complaint— except for the addition of some factual allegations related to his retaliation claim under the FLSA, which is not at issue in this Findings, Conclusions, and Recommendation. (*See* ECF 1, 106).

(ECF 106). Defendants filed an Answer to Kimbrough's First Supplemental Complaint[5] on June 5, 2020. (ECF 108).

On June 15, 2018, Benard and Spohn-Ledford filed their Original Complaint[6] (ECF 30), and they filed a First Amended Complaint on July 31, 2018 (ECF 31). Benard contends that she was employed by Defendants as a nurse practitioner from March of 2016 until her termination on June 26, 2018. (*Id.* at 3). Spohn-Ledford contends that she was employed by Defendants as a nurse practitioner from February of 2017 until June 22, 2018. (*Id.* at 4). Benard and Spohn-Ledford assert unpaid overtime wages and retaliation claims under the FLSA. (*Id.* at 1–2, 6–8). Unlike Kimbrough, Benard and Spohn-Ledford do not assert any non-FLSA claims against Defendants. (*See id.* at 6–8). Defendants filed their Answer to Benard and Spohn-Ledford's First Amended Complaint[7] on June 10, 2019 (ECF 39) and a First Amended Answer on October 23, 2019 (ECF 61). Benard and Spohn-Ledford filed a First Supplemental Complaint[8] on May 27, 2020 (ECF 107), and Defendants filed an Answer to their First Supplemental Complaint[9] on June 5, 2020. (ECF 109).

---

[5] Defendants incorrectly titled their answer as "Defendants' *Third Amended* Answer to Darrell Kimbrough, MSN, FNP-C's *Original* Complaint." (ECF 108) (emphasis added).

[6] The Court granted Defendants' Unopposed Motion to Consolidate (ECF 10) on August 29, 2018, consolidating Cause No. 2:18-CV-111-D, styled *Mary Benard, MSN, FNP-C and Tina Spohn-Ledford, MSN, FNP-C v. Naeem Khan, M.D. and Amarillo Urgent Care, LLC*, with the instant case. (ECF 14).

[7] Defendants untimely filed a First Amended Answer on May 1, 2019. (ECF 25). Subsequently, the Court issued an Order Striking and Unfiling Defendants' First Amended Answer for failure to comply with Rule 15(a)(2) of the Federal Rules of Civil Procedure. (ECF 29 at 1). On June 10, 2019, the Court granted Defendants' Motion for Leave to File Answer. (ECF 35, 38).

[8] Benard and Spohn-Ledford's First Supplemental Complaint is nearly identical to their First Amended Complaint—except for the addition of some factual allegations related to their retaliation claim under the FLSA, which is not at issue in this Findings, Conclusions, and Recommendation. (*See* ECF 31, 107).

[9] Defendants incorrectly titled their answer as "Defendants' *Second Amended* Answer to Plaintiffs' First Supplemental Complaint." (ECF 109) (emphasis added).

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 248. To determine whether there are any genuine issues of material fact, the court must first ascertain the factual issues that are material under the applicable substantive law. *See id*.; *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076, n.14 (5th Cir. 1994). Next, the court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Lavespere*, 910 F.2d at 178; *Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986) (internal quotation omitted)); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). However, Rule 56 "does not impose upon the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16, n.7 (5th Cir. 1992). The court should not weigh the evidence and determine the truth of the matter in determining whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

If the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, no genuine dispute for trial exists. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (citations omitted).

If "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194 (emphasis in original). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007).

## III.    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' EVIDENCE

In their Response, Defendants state in a footnote that "Defendants' objections to Plaintiffs' evidence is included in their [Appendix]." (ECF 97 at 2 n.3). A document entitled, "Defendants' Objections to Plaintiffs Evidence in Support of Plaintiffs' Motion for Partial Summary Judgment" is provided as the last document in Defendants' Appendix. (ECF 98 at 377–81). Defendants' Objections are in the form of a chart consisting of four columns, including a column listing the various documents in Plaintiffs' Appendix and a column briefly stating Defendants' objections to that document. (*Id.* at 378–79). Defendants appear to challenge thirty-two documents in Plaintiffs' Appendix by grouping the documents into six sets of objections. (*See id.*). Defendants provide no argument or citations to authorities in support of any of these objections. (*See id.*).

### A.  Objections as to the Admissibility of Certain Documents

Under the 2010 amendments to Rule 56 of the Federal Rules of Civil Procedure, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). In other words, the "substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible," even though "the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted); *see also Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("This flexibility [of Rule 56(c)(2)] allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record."). "The Court decides preliminary questions about whether evidence is admissible under the Federal Rules of Evidence." *Canter v. Big Lots Stores, Inc.*, 2014 WL 12603044, at *2 (N.D. Tex. Jan. 6, 2014); *see* Fed. R. Evid. 104(a).

All six sets of objections contain very general objections to the admissibility of numerous documents in Plaintiffs' Appendix. (ECF 98 at 378–79). For example, Defendants' first set of objections is for a group of eleven documents[10] in Plaintiffs' Appendix. (*Id.* at 378). Those eleven documents include Plaintiffs' payroll records, charting estimates, notes, and other records. (*Id.*). Defendants state in regard to this first set of documents: "Defendant[s] object[] to Plaintiffs' inclusion of these various documents on the grounds that they are confusing, irrelevant, and inadmissible." (*Id.*).

---

[10] Several of the documents in this grouping consist of ten or more pages. (*See* ECF 98 at 378–79).

In order to properly object to the inadmissibility of evidence offered in support of a motion for summary judgment, a party must specifically articulate the grounds for their objection. *See* Fed. R. Evid. 103(a)(1); *Payne v. Park*, No. 3:11-CV-0497-B, 2012 WL 2958624, at *4 (N.D. Tex. July 19, 2012) (holding that objections to evidence presented in support of a motion for summary judgment were improper under Rule 103(a)(1) when plaintiff objected to statements in evidence as "essentially, specious, conclusory and hearsay."). "The court is not required to review large quanta of evidence to ferret out inadmissible statements. Rather, Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken and stating the specific grounds upon which each piece of evidence should be stricken." *Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 722 (N.D. Tex. 2006) (citing *United States v. Avants,* 367 F.3d 433, 445 (5th Cir. 2004)); *see* Fed. R. Civ. P. 103(a)(1); *United States v. Polasek,* 162 F.3d 878, 883 (5th Cir. 1998) ("A loosely formulated and imprecise objection will not preserve error. Rather, a trial court judge must be fully apprised of the grounds of an objection." (citations omitted)).

Defendants' objections to several groups of documents in Plaintiffs' Appendix fail to identify specific portions or statements of any documents. (ECF 98 at 378–79). Defendants have only provided the page ranges for these documents that, for example, total approximately eighty pages for the first set of objections alone. (*Id.*). Defendants provide no legal support for their objections, which appear to be objections under Rules 401, 403, and 802 of the Federal Rules of Evidence. (*See id.*); Fed. R. Evid. 401, 403, 802. As such, these objections do not meet the specificity requirement of Rule 103(a)(1). Even so, the Court will not consider any of Plaintiffs' evidence that is plainly inadmissible. *See* Fed. R. Evid. 103(d).

### B.  Objections to Affidavits by Undisclosed Witnesses

Defendants object to two documents in Plaintiffs' Appendix: the affidavits of Chase

Jensen[11] and Matthew Logan. (ECF 98 at 379; *see* ECF 90 at 92–100). Mr. Jensen and Mr.

Logan's affidavits state that they are employees of Experity, Inc. and former employees of

Practice Velocity, LLC, "the practice management, electronic medical records software provider

. . . [and] revenue cycle management services provider" for AUC. (ECF 90 at 92, 98). Their

affidavits explain how records produced in response to a subpoena in this case were generated

and what data is contained in each record. (*See id.* at 92–100). Defendants' objection is "that

these are undisclosed witnesses and should be struck." (ECF 98 at 379). In their Response to

Defendants' Objections, Plaintiffs contend that this objection is meritless because: (1)

Defendants disclosed Velocity, LLC in their Rule 26(a)(3) Pretrial Disclosures under Section 6,

Provider of Urgent Care Electronic Medical Records Software & Billing Services (*see* ECF 56

at 2–3); (2) Plaintiffs disclosed any custodian of record, which Mr. Jensen and Mr. Logan are, in

their Pretrial Disclosures (*see* ECF 57 at 2); and (3) Plaintiffs also disclosed any witness

identified by Defendants in their Pretrial Disclosures (*see id.*). (ECF 101 at 3–4).

Under Rule 26 of the Federal Rules of Civil Procedure, a party must provide other parties

with "the name and, if known, the address and telephone number of each individual likely to

have discoverable information—along with the subjects of that information—that the disclosing

party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). A party must

timely supplement or correct discovery responses at any time throughout the case "if the party

learns that in some material respect the disclosure or response is incomplete or incorrect, and if

the additional or corrective information has not otherwise been made known to the other parties

---

[11] Defendants' Objections mistakenly refers to the "Affidavit of Chris Jensen." (ECF 98 at 379).

during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(a). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The parties have not included copies of their Rule 26(a)(1) disclosures in the summary judgment record; instead, Plaintiffs have cited to their previously-filed Rule 26(a)(3) Pretrial Disclosures.[12] (*See* ECF 101 at 3–4). Therefore, it is impossible for the Court to discern whether Plaintiffs satisfied their initial disclosure obligations under Rule 26(a) or their ongoing obligation to supplement their disclosures under Rule 26(e). *See* Fed. R. Civ. P. 26(a)(1)(A)(i), (e)(1)(a). However, the Court finds that if Plaintiffs failed to provide Mr. Jensen or Mr. Logan's information to Defendants prior to including their affidavits, the failure is harmless because the witnesses were disclosed as custodians of records for AUC's medical records software provider in the parties' original Pretrial Disclosures—which were all filed well in advance of Plaintiffs' Motion for Partial Summary Judgment. (*See* ECF 56 at 2–3; ECF 57 at 2; ECF 101 at 3–4); Fed. R. Civ. P. 37(c)(1). As such, Defendants' objections to the affidavits on this basis are overruled.

## IV.   ANALYSIS

Plaintiffs have all brought claims against Defendants under the FLSA for unpaid overtime compensation and retaliation. (ECF 106 at 7–9; ECF 107 at 7–8). However, Plaintiffs only move for summary judgment on their unpaid overtime claims. (ECF 86 at 1–3). For the reasons

---

[12] Under the Court's original Scheduling Order, the parties' deadline to file Rule 26(a)(3) disclosures was on or before October 9, 2019. (ECF 17 at 4). The parties both filed disclosures on that date. (ECF 56–57). Under the current Second Amended Scheduling Order, the parties' deadline to file Amended Rule 26(a)(3) disclosures was on or before June 29, 2020. (ECF 76 at 5). Plaintiffs and Defendants both filed amended disclosures on that date. (ECF 112–13).

discussed below, the undersigned recommends that Plaintiffs' Motion for Partial Summary

Judgment be DENIED as to their claims under the FLSA.

The FLSA provides that, with exceptions, employers must pay their employees for every

hour worked over forty hours in a given workweek ("overtime hours") at an overtime rate. 29

U.S.C. § 207(a)(1). "An employee bringing an action for unpaid overtime compensation must

first demonstrate by a preponderance of the evidence: (1) that there existed an employer-

employee relationship during the unpaid overtime periods claimed; (2) that the employee

engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's

overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v.

Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). If an employer fails to pay

his employee the required overtime wages, the employer shall be liable to the employee in the

amount of his unpaid overtime wages "and in an additional equal amount as liquidated damages."

29 U.S.C. § 216(b).

Plaintiffs have failed to establish beyond peradventure the fourth element of their FLSA

overtime claim: the amount of overtime compensation due. *See Johnson*, 758 F.3d at 630;

*Carmack v. Park Cities Healthcare, LLC*, 321 F. Supp. 3d 689, 699 (N.D. Tex. 2018) (Fitzwater,

J.). The FLSA requires employers to pay an overtime premium of "a rate not less than one and

one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The "regular

rate" is "the hourly rate actually paid the employee for the normal, nonovertime workweek for

which he is employed[.]" 29 C.F.R. § 778.108 (citing *Walling v. Youngerman-Reynolds

Hardwood Co.*, 325 U.S. 419 (1945)).

"The regular hourly rate of pay of an employee is determined by dividing his total

remuneration for employment (except statutory exclusions) in any workweek by the total number

of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; *see Carmack*, 321 F. Supp. 3d at 699. The Department of Labor regulations provide that the regular rate of pay must be calculated using "a single workweek" and that "averaging of hours over 2 or more weeks" is not permitted. 29 C.F.R. § 778.104; *see Pittman v. McClain's R.V., Inc.*, No. 4:12-CV-542, 2013 WL 12139092, at *7 (E.D. Tex. June 12, 2013). When the employee is paid on an hourly basis, the hourly rate is the "regular rate." 29 C.F.R. § 778.110.

In their Motion for Partial Summary Judgment, Plaintiffs claim they are entitled to be paid for (1) "unpaid overtime hours [worked] while on-the-clock" and (2) "unpaid regular and overtime hours [worked] while off-the-clock." (ECF 86 at 2–3). As such, Plaintiffs appear to assert that, under the FLSA, they are entitled to compensation for unpaid, regular wages for disputed work time ("off-the-clock hours") in addition to asserting that they are entitled to compensation for unpaid, overtime wages for time that is both disputed (off-the-clock hours) and undisputed ("on-the-clock hours") as damages for their unpaid overtime compensation claim. (*See id.*).

In their Brief, Plaintiffs contend that they "have more than sufficient evidence of damages." (ECF 87 at 21). As to their claim for unpaid on-the-clock hours at their overtime rates, Plaintiffs assert that Kimbrough is entitled to $3,011.03; Benard is entitled to $5,576.30; and Spohn-Ledford is entitled to $14,538.53. (*Id.*). As to their claim for unpaid off-the-clock hours, at both their regular and overtime rates, Plaintiffs assert that Kimbrough is entitled to $16,580.29; Benard is entitled to $28,715.79; and Spohn-Ledford is entitled to $16,496.08. (*Id.* at 22). Plaintiffs do not distinguish in their Brief which portions of each total are associated with their

regular rates and which portions were calculated using their overtime rates for these off-the-clock hours. (*See id.*).

There are numerous issues with Plaintiffs' proposed damages. Plaintiffs' Brief provides almost no explanation for the above-mentioned damages. (*Id.* at 20–22). Although Plaintiffs claim that they "have meticulously reviewed" the relevant records in order to calculate the overtime compensation due to them, they provide none of those calculations in their Brief. (*Id.*); *see Carmack*, 321 F. Supp. 3d at 699–701 (finding that employees' calculations were reasonable when "[t]hey divide[d] the gross wages each plaintiff received for each two-week period by the total number of hours the plaintiff in question actually worked during that pay period," "then calculate[d] their overtime hours biweekly by taking the total number of hours they worked in the time period and subtracting 80 hours," and finally "multipl[ied] those overtime hours by the half time owed by [the employer] based on their regular rate (regular rate divided by 2) to arrive at a number for total overtime compensation owed."); *Mack v. Avara Cmty. Health Servs., Inc.*, No. 3:13-CV-1976-P, 2016 WL 4801306, at *3 (N.D. Tex. Feb. 5, 2016) (Solis, J.) (noting employee's detailed calculations of the amount of overtime compensation due to her).

Plaintiffs' only support in their Brief for their asserted damages are citations to large sections of their Appendix after each total. (ECF 87 at 20–22). For instance, Plaintiffs claim that Kimbrough is entitled to $16,580.29 for an unspecified combination of regular and overtime hours he allegedly worked off-the-clock.[13] (*See id.* at 22). Plaintiffs do not provide the calculation

---

[13] In the following paragraphs of this Findings, Conclusions, and Recommendation, the Court has specifically addressed Plaintiffs' assertion that Kimbrough is entitled to $16,580.29 as compensation for his unpaid, off-the-clock hours (including both regular and overtime hours). (*See* ECF 87 at 22). Although the Court has chosen to specifically address the issues related to that one total in this Findings, Conclusions, and Recommendation, the Court wishes to make abundantly clear the fact that it has thoroughly analyzed all six totals claimed by Plaintiffs: $3,011.03 for Kimbrough's unpaid on-the-clock overtime compensation; $5,576.30 for Benard's unpaid on-the-clock overtime compensation; $14,538.53 for Spohn-Ledford's unpaid on-the-clock overtime compensation; $16,580.29 for Kimbrough's unpaid, off-the-clock compensation; $28,715.79 for Benard's unpaid, off-the-clock

or any support in their Brief for how they determined that Kimbrough is owed $16,580.29—

Plaintiffs merely cite to pages 65–91, 232–94, and 475 in their Appendix. (*See id.*; ECF 88 at 1–

3, 69–95; ECF 89 at 5–67; ECF 90 at 89).

 Having reviewed the Appendix, the first citation appears to contain some or all of

Kimbrough's payroll records. (ECF 88 at 1, 69–95). The second citation appears to contain

numerous documents: some or all of Kimbrough's time records (ECF 89 at 6–35); some

additional payroll records (*Id.* at 5, 36–61); a chart that appears to detail some or all of

Kimbrough's logins to Defendants' patient charting software, including before and after he was

constructively discharged by Defendants, (*Id.* at 62–63); a one-page note entitled "Working

Hours Summary of Darrell Kimbrough" that appears to provide the total hours worked by

Kimbrough every pay period (two weeks) while employed by Defendants (*Id.* at 64); and a two-

page chart entitled "Darrell Kimbrough Overtime Hours from Time Sheets" that appears to relate

to Kimbrough's *other* requested damages—$3,011.03 for overtime hours worked while *on-the-*

*clock* (*Id.* at 66–67). (*See* ECF 88 at 2). The third citation is to page 475 of Plaintiffs' Appendix,

which states that "[d]ue to size restrictions, Plaintiffs produced ["PV_009

BTP152815_DKIMBROUGH"] via flash drive to the Court." (ECF 90 at 89). The Excel file on

the flash drive with that title contains the equivalent of hundreds of thousands of pages of data,

with column titles such as "AuditLogId," "AuditLogDetailPk," and "ActionType." This data

appears to be related to Kimbrough's access to Defendants' patient charting software. (*See* ECF

87 at 22).

---

compensation; and $16,496.08 for Spohn-Ledford's unpaid, off-the-clock compensation. (*See id.* at 21–22). The Court notes that much of the evidence (including payroll records, time sheets, and the records regarding Plaintiffs' access to the patient charting software) is substantially similar for each of the three plaintiffs and each category of damages claimed (on-the-clock hours and off-the-clock hours); the analysis is thereby substantially similar. Consequently, for conciseness and clarity, the Court has chosen to only provide a detailed summary of the issues related to one of the six damages totals in this Findings, Conclusions, and Recommendation.

Plaintiffs also include a few general citations to their Appendix in other parts of their Brief. For instance, not included with the other citations to the Appendix in support of Plaintiffs' claim that Kimbrough is entitled to $16,580.29 for regular and overtime hours worked off-the-clock, but noted earlier in the Brief, is a citation to several pages of charts in Plaintiffs' Appendix, which appear to relate to their calculation of $16,580.29. (*See* ECF 87 at 21). This chart, which appears to have been created by Plaintiffs or Plaintiffs' counsel on March 20, 2020 is entitled "Darrel Kimbrough Charting Hours" and contains several columns, including "Time Sheet Hours," "At Home Charting Hours," "Charting Hours Billed at Regular Rate," and "Charting Hours Billed at Overtime Rate." (ECF 89 at 68–69). This chart, therefore, appears to be Plaintiffs' calculation of the compensation they claim is due for hours they worked off-the-clock completing patient charts. However, it is unclear what data Plaintiffs have relied on to generate this chart, including the data supporting their at-home charting hours. The Court also notes that Plaintiffs have included yet another chart in their Appendix; this chart appears to also include Plaintiffs' estimation of the hours Kimbrough spent working at home completing patient charts, but with different calculations for "minimum wages due" and "maximum wages due," resulting in two different figures from the $16,580.29 in Plaintiffs' brief. (*Id.* at 70–79).

The Court has reviewed the cited and uncited portions of Plaintiffs' Appendix, but the Court is unable to discern how Plaintiffs calculated any of their proposed damages. Simply put, Plaintiffs failed to include their calculations in their Brief, and the Court is left to presume how Plaintiffs' claimed damages fit together with the evidence in Plaintiffs' Appendix. But the Court is unable to discern how the data contained in all of the documents in Plaintiffs' voluminous Appendix can be used to calculate each damages total in Plaintiffs' Brief.

Further, there are other documents in the Appendix that demonstrate the existence of genuine issues of material fact regarding the amount of overtime compensation due to Plaintiffs. For example, the Appendix includes a letter from Defendants' former counsel, Jeremi Young, to Plaintiffs' counsel, dated May 28, 2019. (ECF 88 at 198). In that letter, Mr. Young encloses a spreadsheet containing data "provided by Practice Velocity, the vendor that provided electronic medical record services to [AUC] during most of each Plaintiff's employment." (*Id.*). The report shows each Plaintiff's access to the EMR system, including the dates and times they accessed the system and the IP address from which the activity occurred. (*Id.*). Mr. Young then explains that "the report apparently indicates there were large spans of time during which one or more plaintiffs did not access the EMR system from any location other than the [AUC] clinic." (*Id.*; *see* ECF 88 at 199–222). These documents and other evidence in the Appendix demonstrate that there are genuine issues of material fact regarding the number of hours Plaintiffs allegedly worked off-the-clock, and thus, the amount of overtime compensation due. Therefore, the Court finds that Plaintiffs have failed to meet their "heavy" burden to establish beyond peradventure the fourth element of their FLSA unpaid overtime claim: the amount of overtime compensation due to them. *See Johnson*, 758 F.3d at 630; *Carmack*, 321 F. Supp. 3d at 699; *Cont'l Cas. Co.*, 2007 WL 2403656, at \*10.

Finally, the Court notes that Plaintiffs appear to assert that by stating the total amount of damages that they are allegedly entitled to with general citations to their Appendix, they are entitled to have the burden shift to Defendants "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687–88

(1946)). However, an employee is only entitled to this burden-shifting after an employee has produced sufficient evidence to establish a prima facie case, which Plaintiffs have failed to do. *See id.*; *Carmack*, 321 F. Supp. 3d at 696.

Nevertheless, the Court notes that even if Plaintiffs were entitled to have the burden shift to Defendants, a fact issue still exits. *See Parker v. ABC Debt Relief Co.*, No. 3:10-CV-1332-P, 2013 WL 371573, at *15 (N.D. Tex. Jan. 28, 2013) (Solis, J.) (holding that even though the burden shifted to employers to come forward with evidence of the precise hours worked or to negate the reasonableness of the employees' evidence, a fact issue existed as to whether employers successfully rebutted employees' evidence) (citing *Mount Clemens Pottery Co.*, 328 U.S. at 687–88). For instance, Defendants' Appendix includes the transcript for a deposition of Kimbrough. (ECF 98 at 18–161). In that deposition, Kimbrough states that he did not keep any records of the time he spent charting at home until after he quit his job. (*Id.* at 108–09). Instead, Kimbrough testified that he prepared a document containing his estimates of the hours he worked from home while employed by Defendants on "[t]he weekend [after he] quit." (*Id.* at 109). This evidence and other evidence proffered by Defendants negates the reasonableness of the inferences to be drawn from Plaintiffs' evidence regarding the hours they worked off-the-clock. *See Mount Clemens Pottery Co.*, 328 U.S. at 687–88; *Parker*, 2013 WL 371573, at *15. Whether Defendants have successfully rebutted Plaintiffs' evidence is a fact issue reserved for the jury. *Parker*, 2013 WL 371573, at *15. Accordingly, even if Plaintiffs were entitled to have the burden shifted to Defendants, there are genuine issues of material fact regarding the amount of overtime compensation due to Plaintiffs, and summary judgment should thereby be denied.

Plaintiffs were required to establish beyond peradventure all of the elements of their overtime compensation claim under the FLSA to warrant judgment in their favor. *Fontenot*, 780

F.2d at 1194. Because Plaintiffs failed to meet this "heavy" burden as to the fourth element of their claim, the Court does not need to address the remaining elements of Plaintiffs' overtime compensation claim. *See Cont'l Cas. Co.*, 2007 WL 2403656, at \*10; *Johnson*, 758 F.3d at 630; *Carmack*, 321 F. Supp. 3d at 699. In conclusion, the undersigned recommends Plaintiffs' Motion for Partial Summary Judgment be DENIED as to Plaintiffs' unpaid overtime claims under the FLSA.

## V.   RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that Plaintiffs' Motion for Partial Summary Judgment (ECF 86) be DENIED as to Plaintiffs' unpaid overtime claims under the FLSA and DENIED AS MOOT as to Defendants' counterclaims.

## VI.   INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED July 2, 2020.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See*

28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).