IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 18 2020
CLERK, U.S. DISTRICT COURT
By _____
              Deputy

| | | |
|---|---|---|
| DARRELL KIMBROUGH, MSN, FNP-C, <br> MARY BENARD, MSN, FNP-C, and <br> TINA SPOHN-LEDFORD, MSN, FNP-C, <br><br> Plaintiffs, <br><br> v. <br><br> NAEEM KHAN, M.D. and <br> AMARILLO URGENT CARE, LLC, <br><br> Defendants. | §§§§§§§§§§§§§ | 2:18-CV-82-Z-BR |

## ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment, filed April 6, 2020 (ECF No. 86) ("MSJ"). In the MSJ, Plaintiffs move the Court for summary judgment on six issues related to its claims and all of Defendants' counterclaims. *See* MSJ at 2–3. On July 2, 2020, the United States Magistrate Judge entered her findings, conclusions, and recommendation on the MSJ. *See* ECF No. 114 ("FCR"). She recommends that the MSJ be denied in part with respect to Plaintiff's FLSA unpaid overtime claims and denied in part as moot with respect to Defendants' counterclaims. *See* FCR at 17. Plaintiffs timely filed objections to the FCR, *see* ECF No. 117, and Defendants filed a reply to Plaintiffs' objections, *see* ECF No. 118.

Because Plaintiffs objected to the FCR, the Court conducts an independent and de novo review of the facts and of those conclusions and recommendations to which Plaintiffs have objected. *See* FED. R. CIV. P. 72(b)(3). After this review and for the reasons explained below, the Court ADOPTS IN PART and REJECTS IN PART the United States Magistrate Judge's findings, conclusions, and recommendation.

**BACKGROUND**

This case consolidates two actions grounded in what Plaintiffs assert are unpaid overtime wages they are due under the Fair Labor Standards Act ("FLSA") for hours they worked as nurse practitioners for Defendants. *See* ECF No. 106 ¶¶ 32–39, at 7–8; ECF No. 108 ¶¶ 32–39, at 5. Defendants previously moved for summary judgment on the grounds that Plaintiffs were independent contractors and provided no evidence of damages. *See* ECF No. 45, at 1. The Court denied Defendants' motion because they failed to show there is no genuine issue of material fact or they are entitled to judgment as a matter of law. *See* ECF No. 66, at 10–15; ECF No. 72, at 1.

The Court here considers *Plaintiffs'* motion for partial summary judgment, wherein Plaintiffs ask the Court to summarily adjudge six narrow issues: (1) Plaintiffs were "employees" under the FLSA; (2) Defendants were Plaintiffs' employer; (3) Defendant Khan has individual liability for any damages caused by the LLC Defendant; (4) Plaintiffs are not exempt from FLSA overtime provisions; (5) Plaintiffs are entitled to damages for unpaid overtime wages; and (6) Plaintiffs are entitled to FLSA liquidated damages. *See* ECF No. 86, at 2–3. They also move the Court to dismiss Defendants' counterclaims, which the Court already dismissed after Plaintiffs filed the MSJ. *See* ECF No. 72.

In her July 7 FCR, the United States Magistrate Judge notes that (1) Plaintiffs did not provide the underlying "math" supporting their calculated damages, and (2) the EMR Time Stamps do not definitively prove the hours worked. *See id.* at 11–15; *see also* ECF No. 88, at 198. She therefore concludes a genuine issue of material fact remains as to the amount of damages Plaintiff allegedly suffered and recommends the Court deny Plaintiffs summary judgment on their damages issues, i.e. issues 5 and 6. She then reads Fifth Circuit precedent in *Johnson v. Heckmann Water*

*Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014), to permit her to deny summary judgment on all liability issues without any further analysis.

### LEGAL STANDARD

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. FED R. CIV. P. 56(c). A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. To determine whether there are any genuine issues of material fact, the court must first ascertain the factual issues that are material under the applicable substantive law. *See id.*; *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.14 (5th Cir 1994). Next, the court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Lavespere*, 910 F.2d at 178. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). However, Rule 56 "does not impose upon the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 16 & n.7 (5th Cir. 1992). The court should not weigh the evidence and determine the truth of the matter in determining whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine dispute for trial exists. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported

3

speculation are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). If "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194.

ANALYSIS

**A. Damages (issues 5 and 6)**

Plaintiffs and Defendants strenuously disagree about the number of hours, if any, Plaintiffs worked overtime while employed at Amarillo Urgent Care, LLC. Because of the three reasons the Court lays out below, it cannot at this time conclude that Plaintiffs have met their burden to prove no genuine issue of material fact remains or that they are entitled to judgment on the damages issue as a matter of law. Accordingly, the Court DENIES Plaintiffs summary judgment on issues five and six.

*1. Disorganized data*

Plaintiffs previously estimated the hours they allegedly charted from home based solely on their mental reconstructions long after leaving Amarillo Urgent Care, LLC. To their credit, Plaintiffs now attempt to rigorize these estimates through EMR Time Stamps that purportedly reflect when Plaintiffs "logged in" and "logged out" of patient charts. But they choose to dump the data haphazardly into their appendices, intersperse it with obviously irrelevant data, and provide the Court with no winnowing fork to separate the wheat from the chaff. Even after the United States Magistrate Judge and this Court have gone beyond the requirements of Rule 56 by scouring the appendices in search of Plaintiffs' baseline data, we are left without any confidence that Plaintiffs summation of hours in any way comports with the EMR.

### 2. *Misguided methodology*

Until Plaintiffs disentangle their EMR data, the only source the Court can identify where Plaintiffs sum their purported overtime hours is in their mental reconstructions. *See* ECF No. 88, at 169–177. These reconstructions enjoy the virtue of clarity, but they are methodologically flawed even if the Court assumes Plaintiffs attempt to faithfully account for hours in which they have a clear economic interest. Time and again, the reconstructions include approximations and ranges. *See id.* Yet nowhere do Plaintiffs appear to engage in any sensitivity analysis that results in a corresponding range of potential damage totals. Instead, they calculate damages down to the penny from step after step of compounded approximations. Like a paleontologist who assures his students that a dinosaur fossil is exactly 100,000,005 years old because it was approximately a hundred million years old when he discovered it in 2015, Plaintiffs' approach is mathematically unsound and results in damages a rational jury could find to be falsely precise.

### 3. *Camouflaged calculations*

Even if baseline numbers were clear and the Plaintiffs' mathematical methodology were sound, the FCR correctly highlights that Plaintiffs fail *anywhere* in their MSJ or appendices to show the Court how they in fact calculate their damages. It is unclear which hours they consider overtime versus regular time, and Fifth Circuit precedent does not permit the Court to automatically and *sua sponte* assume that hours should simply be summed Sunday through Saturday each week. There is no connective tissue between the raw data and the totals, no operating procedure for putting one calculation after another. In summary, the Court finds in the appendices data, data everywhere but no operating system (OS) to link.

For all of the three foregoing reasons, the Court concludes Plaintiffs have not met their burden to prove beyond peradventure that no genuine issue of material fact remains as to the

amount of damages they have suffered if Defendants are found liable for nonpayment of overtime wages under the FLSA. Accordingly, the Court ADOPTS the Magistrate Judge's recommendation to DENY summary judgment on issues 5 and 6.

### B. Liability (issues 1–4)

The Court cannot emphasize enough the herculean labor the FCR undertakes to sift through more than a ream of largely unstructured exhibits and a welter of data to arrive at its correct conclusions even on the damages issues. The effort goes far above and beyond what Rule 56 requires, and it is particularly remarkable for having so diligently analyzed the records during the runup to the July 4 holiday.

However, the Court shares Plaintiffs' objection to the FCR's chain of reasoning from the issue of damages to the issues of liability upon which Plaintiffs also ask the Court to pass summary judgment. The FCR reads the conjunctive *Johnson* factors to require no analysis of any of the liability elements because the damages elements cannot be summarily adjudged. *See* ECF No. 114, at 16–17. This is a misreading of the logic of *Johnson*, which required a plaintiff to demonstrate all of four different factors to *survive* a defendant's dispositive motion.[1] When roles are reversed, *i.e.* a plaintiff *brings* a dispositive motion, the conjunctive no longer need logically apply. And the Court indeed has previously held that it does not apply, *i.e.* issues of liability must still be analyzed in such a case even if the damages issues cannot be summarily adjudged. *See, e.g. McDaniel v. Family Sleep Diagnostics, Inc.*, 2016 WL 5122123 (N.D. Tex. Sept. 20, 2016). The Court therefore rejects that conclusion from the FCR and below analyzes each liability issue separately.

---

[1] *Johnson* itself only pertained to motions to dismiss. However, this Court previously has extended the case to motions for summary judgment. *See Stewart v. Lone Star Exteriors, LLC*, 2019 WL 8889626, at *3 (N.D. Tex. Oct. 30, 2019) (Kernodle, J.).

### A. Employer-Employee Relationship

Plaintiffs maintain they were employees, whereas Defendants insist Plaintiffs were independent contractors. The definition of "employee" under the FLSA is broad, encompassing all workers who are "economically dependent upon the alleged employer." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). Within the Fifth Circuit, five factors determine whether such economic dependence exists:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

*Hopkins*, 545 F.3d at 343. Plaintiffs allege they were "employees" based on (1) the wording of the contracts, which repeatedly refer to them as "employees"; and (2) their receipt upon hire of the "Amarillo Urgent Care Employee Handbook." ECF No. 88, at 5–25; *id.* at 26–38. So confident are Plaintiffs that this language holds that they do not in their MSJ or in its hundreds of pages of appendices expressly consider the *Hopkins* factors. For their part, Defendants only present the Court with conclusory statements and an irrelevant assertion that Plaintiffs also worked at other clinics to "argue" that Plaintiffs were instead independent contractors. *See* ECF No. 97 ¶¶ 12–19, at 4–6.

Contrary to Plaintiffs' impression, the use of variations on the word "employee" in their contractual paperwork and their receipt of an "employee handbook" do not prove the existence of an employer-employee relationship unless these documents mirror economic reality as captured in the *Hopkins* factors. *See Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 381–82 (5th Cir. 2019). The Court could stop its analysis there and deny Plaintiffs summary judgement on this issue because Rule 56 does not compel the Court to independently sift the record for evidence to

support a party's motion. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 91516 & n.7 (5th Cir. 1992). Yet even when the Court takes the extra step of independently reviewing all Plaintiffs' filed materials, it must conclude that a rational jury could conclude genuine issues of material fact remain on each of the *Hopkins* factors. As such, the Court agrees with the conclusion, even though not the reasoning, of the FCR and DENIES Plaintiffs' summary judgment on the issue of whether an employee-employer relationship existed.

### B. Individual liability within an LLC

Plaintiffs also ask the Court for summary judgment on the issue of whether Defendant Khan is individually liable as an employer for any FLSA of the FLSA the LLC Defendant may have committed. *See* MSJ at 15–18. To determine whether an individual or entity is an employer, the Court considers whether the alleged employer "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012); *accord Carmack v. Park Cities Healthcare, LLC*, 321 F. Supp. 3d 689, 697 (N.D. Tex. 2018) (Fitzwater, J.).

Defendants nowhere appear to contest Plaintiffs' position on this issue, and the Court understands their choice not to tilt at windmills. The record leaves no genuine issue of material fact on the *Gray* factors as they related to Defendant Khan. Defendant Khan concedes in deposition testimony that he is the sole member, owner, and operator of Amarillo Urgent Care, LLC, of which he serves as chief operating officer and president. *See* Khan Dep. 9:18–10:7 (DATE), *in* ECF No. 88, at 227–28.[2] He makes all hiring and firing decisions at Amarillo Urgent Care, LLC. *See* Khan

---

[2] Note that the page numbers here vary from those listed in Plaintiffs' MSJ, as the unstructured and unsearchable format of Plaintiffs' appendices even leads *them* to misidentify the pages on which specific records are located. Plaintiffs' table of contents does not provide much further assistance, as it does not report records' actual location within the appendices. For the sake of efficient resolution of this case and in view of attorneys' professional obligation

Dep. 18:13–20:22, in ECF No. 88, at 53–55. The employment handbook makes clear Defendant Khan controls clinic policies and procedures that collectively create the conditions for employment at Amarillo Urgent Care, LLC. *See* ECF No. 88, at 26 & 228. Defendant Khan sets the rate and method of payment for each employee at the clinic. *See* Rico Dep. 17:13–17, *in* ECF No. 88, at 63. He also maintains the clinic's employee records. *See* ECF No. 88, at 28 (specifying employees "may review their official personnel file in the Management office only in the presence of the CEO [i.e. Defendant Khan] or his designee.").

In other words, because Defendant Kahn satisfies all four *Gray* elements, there are no genuine issues of material fact with respect to whether Defendant Khan was a joint employer with the LLC Defendant if any employer-employee relationship existed. He consequently as a matter of law bears joint responsibility with the LLC Defendant for any FLSA violations at the clinic. *See* 29 U.S.C. § 203(d); 29 C.F.R. § 791.2(a); *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). The Court therefore GRANTS Plaintiffs summary judgment on the narrow issue enumerated as issue 3 in the MSJ, namely, "[o]n the issue of whether Defendant, Naeem Khan, M.D. is individually liable to Plaintiffs as an 'employer' for FLSA purposes . . . ."

### C. Plaintiffs are not "exempt" employees under the FLSA

Congress enacted the FLSA during the height of the New Deal in 1938 and just one year after the switch in time that saved nine,[3] finding "labor conditions detrimental to the maintenance

---

to thoroughly and competently represent their clients, *see* MODEL RULES OF PRO. CONDUCT r. 1.1 cmt. 5 (AM. BAR ASS'N 1983), the Court encourages all attorneys in this case to be diligent and careful in assembling appendices in the future, particularly if they extend to hundreds of pages.

[3] *West Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937), upheld the constitutionality of state minimum wage laws and thereby ended the *Lochner* era of nearly complete "freedom of contract." The "switch in time" refers to Justice Owen Roberts's sudden jurisprudential shift away from his beliefs about freedom of contract, which many contemporaneous commentators viewed as a move motivated solely by institutional interests, *i.e.* saving the Supreme Court from Democrats' threats to pack what they perceived as a conservative Supreme Court. *See generally* Thomas S. Clark, The Politics of Judicial Independence: Court-Curbing and the Separation of Powers 71–76 (Sept. 2008) (Ph.D. dissertation, Princeton University) (ProQuest).

of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). Concordant with its remedial measures targeting the most disempowered workers, the FLSA from its beginning excluded many professional workers who fall into assorted categories. The burden falls on an employer to prove that an employee falls within one of these categories, and the Court must "fairly" construe each category whenever a debate arises over whether a particular employee claims he or she is entitled to overtime pay under the FLSA. *See Fraser v. Patrick O'Connor & Assoc., L.P.*, 954 F.3d 742, 745 (5th Cir. 2020) (citing *Encino Motorcars, LLC v. Navarro*, --- U.S. ---, 138 S. Ct. 1134, 1142 (2018)).[4]

Defendants assert Plaintiffs as nurse practitioners fell within the FLSA's white-collar employee exemption because they hold a license to practice medicine and all medical professionals are exempt from FLSA overtime rules. *See* ECF No. 97 ¶¶ 21–23, at 6–7. For their part, Plaintiffs insist they do not fall into the exemption because they were paid hourly rather than being salaried. *See* ECF No. 102 at 5–6. The considerations are more complex than either party suggests. As the Fifth Circuit noted when it studied this precise issue as one of first impression in *Belt v. EmCare, Inc.*, neither the FLSA nor the regulations interpreting it as of 2006 shed any clear light on whether nurse practitioners "practice medicine" and therefore fall within the "medical professional" exemption. *See* 444 F.3d 403, 405 (5th Cir. 2006). The Fifth Circuit at the time took note of a U.S. Department of Labor opinion letter that stated nurse practitioners do not "practice medicine," and it found this opinion persuasive based on its independent analysis of CFR text; the medical

---

[4] Plaintiffs in their MSJ refer the Court to a different standard, suggesting the Court should construe the exempted categories of employees "'narrowly against the employer.'" MSJ at 18 (quoting *Meza v. Intelligent Mexican Marketing, Inc.* 720 F.3d 577, 581 (5th Cir. 2013)). As the Fifth Circuit notes in *Fraser*, Plaintiffs' standard has not been good law since 2018. The Court, based on a totality of the circumstances including the apparently rushed nature of Plaintiffs' MSJ, believes that the error was due to negligence rather than out of a desire to misrepresent the law to the Court. As such, it uses its broad discretion under Rule 11 of the Federal Rules of Civil Procedure not to impose any sanctions on Plaintiffs for their misstatement of the appropriate legal standard. *See* FED. R. CIV. P. 11(b)(2); 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1336 (4th ed. 2020).

professional exemption's regulatory history; and the Texas Occupational Code's discussion of the roles, duties, and qualifications of nurse practitioners. *See id.* at 412–16. The Fifth Circuit therefore concluded that nurse practitioners are not medical professionals and are exempt from FLSA overtime rules only if they receive a salary rather than hourly pay. *See id.* at 417.

The relevant regulations, Department of Labor opinion, and understanding of nurse practitioners under the Texas Occupation Code remain the same as of today. *See* TEX. OCC. CODE §§ 031.002 & .251 (Vernon's). Therefore, even if the Fifth Circuit precedent in *Belt* did not exist, the Court would come to the same conclusion of reasonableness under *Auer* and *Skidmore* in regard to the Department of Labor's interpretation that nurse practitioners are not professionals engaged in the "practice of medicine" as the FLSA understands the expression. As such, the question of whether Plaintiffs were exempt from FLSA overtime regulations pivots on whether they were salaried or hourly employees. Based on Plaintiffs' employment contracts and Defendant Khan's deposition testimony, no rational jury could find that Plaintiffs were not paid hourly.[5] Under *Belt*, Plaintiffs are entitled to judgment on this issue in their favor as a matter of law. The Court therefore GRANTS Plaintiffs' motion for summary judgment on the narrow issue enumerated as issue 4 in the MSJ, namely, "[o]n the issue of whether the Plaintiffs were non-exempt from overtime pursuant to the FLSA."

In sum, the Court ADOPTS in part and REJECTS in part the United States Magistrate Judge's findings, conclusions, and recommendations. The Court GRANTS Plaintiffs summary judgment on issue 3 (Defendant Khan is individually liable for any FLSA violations committed

---

[5] Plaintiffs' contracts expressly state that Plaintiff Kimbrough "shall receive an hourly rate of $48.08 payable biweekly." ECF No. 88, at 5. The employment contracts for Plaintiffs Benard and Spohn-Ledford likewise expressly state that they started work at Amarillo Urgent Care, LLC at hourly wages of $44.45 and $55.29 respectively. ECF No. 88 ¶ 1, at 16; ECF No. 88 ¶ 1, at 24. These specifications of "hourly" wages are repeated in the separate "Compensation" sections of Plaintiffs Benard and Spohn-Ledford's employment contracts. *See* ECF No. 88, at 12 & 20. Defendant Khan also concedes in his deposition that Plaintiffs were paid hourly. *See* Khan Dep. 21:9–13, *in* ECF No. 88, at 56.

by the LLC Defendant) and on issue 4 (Plaintiffs were not exempt employees under the Fair Labor Standards Act). The Court DENIES Plaintiffs summary judgment on issues 1, 2, 5, and 6. Lastly, the Court DENIES AS MOOT Plaintiffs' motion for summary judgment on Defendants' counterclaims.

**SO ORDERED**.

August **18**, 2020.

*[signature]*

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE