IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DARRELL KIMBROUGH, MSN, FNP-C, MARY BENARD, MSN, FNP-C and TINA SPOHN-LEDFORD, MSN, FNP-C, | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL NO. 2:18-CV-00082-D |
| NAEEM KAHN, M.D. and AMARILLO URGENT CARE, LLC, | § § § § | |
| Defendants. | § | |

## JOINT FINAL PRE-TRIAL ORDER

COMES NOW Plaintiffs Darrell Kimbrough, MSN, FNP-C, Mary Benard, MSN, FNP-C, and Tina Spohn-Ledford, MSN, FNP-C (collectively "Plaintiffs") and Defendants Naeem Khan, M.D. and Amarillo Urgent Care, LLC (collectively "Defendants") and jointly file this Joint Final Pre-Trial Order pursuant to the Court's August 20, 2020 Scheduling Order (Doc. 122) and would respectfully show the Court as follows:

**A.  Counsel for the Parties**

Plaintiffs:

MULLIN HOARD & BROWN, LLP
Shawn D. Twing, SBN 00798008
stwing@mhba.com
500 S. Taylor St., Suite 800
Amarillo, Texas 79101-1656
(806) 372-5050 telephone
(806) 372-5086 facsimile
Elizabeth Chermel, SBN 24074026
bbones@mhba.com
2515 McKinney Avenue, Suite 900
Dallas, Texas 75201
(214) 754-0040 telephone
(214) 754-0043 facsimile

Defendants:

COWLES & THOMPSON, PC
Casey S. Erick, SBN 24028564
901 Main St, Suite 3900
Dallas, TX 75202
(214) 672-2138 telephone
(214) 672-2338 facsimile
cerick@cowlesthompson.com

B.     **Statement of Jurisdiction**

This Court has original subject matter jurisdiction over this action and the claims asserted under 28 U.S.C. § 1331 and 29 U.S.C. §216(b) as this action is brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA").

C.     **Nature of the Action**

Each Plaintiff has asserted claims for unpaid regular and overtime hours pursuant to the FLSA and seek the remedies provided for in 29 U.S.C. § 216(b), this Court's power to grant equitable relief and any further remedies provided by federal common law. Specifically, Plaintiffs seek the following relief:

1. Payment for uncompensated hours worked as defined by 29 U.S.C. § 203 (g) and 29 C.F.R. §§ 785. 6 – 7, 9, 11;

2. Payment of the overtime premium on all compensable hours worked over 40 in any workweek as required by 29 U.S.C. § 707 (a)(1); 29 C.F.R. § 778.102 determined on a workweek basis as defined by 29 U.S. C. § 207(a); 29 C.F.R. § 778.103;

3. Liquidated damages as provided for in 29 U.S.C. § 216(b);

4. Attorney fees and costs of this action as provided for in 29 U.S.C. § 216(b);

5. Prospective injunctive relief enjoining Defendants from future violations of the FLSA;

6. Post-Judgment Interest as provided for in 28 U.S.C. § 1961(a).

Each Plaintiff also asserts claims of retaliation for exercising their rights under the FLSA as prohibited by 29 U.S.C. § 203(a). They seek the following relief:

1. Prospective injunctive relief enjoining Defendants from retaliatory conduct against Plaintiffs including the continued maintenance of a retaliatory lawsuit;

2. Back-pay as provided for in 29 U.S.C. § 216(b);

3. Front-pay as provided for in 29 U.S.C. § 216(b);

4. Compensatory damages as provided for in 29 U.S.C. § 216(b).

D.     **Contentions of the Parties**

    **Plaintiffs' Contentions**

In this case, Plaintiffs maintain that Defendants failed to pay them overtime and pay them for all hours worked while employed by Defendants Naeem Khan, M.D. and Amarillo Urgent Care, LLC. They further maintain that these failures constitute willful violations of the federal Fair Labor Standards Act ("FLSA").

Plaintiffs contend they were employed by Defendants as "non-exempt" employees. This means they were not exempt from the overtime requirement of the FLSA.

Plaintiffs contend that they regularly worked in excess of 40 hours a week, but were not paid the legally mandated overtime premium. The overtime premium is equal to one and one-half times their regular hourly rate.

Plaintiffs also contend that they regularly worked "off the clock" for the clinic, but they were not paid either straight time, meaning their regular rate, or overtime for any of those hours.

Plaintiffs contend that they were each individually subjected to retaliatory conduct for asserting their rights under the FLSA. The retaliation occurred while Plaintiffs were employed and has continued during the course of this lawsuit.

Plaintiffs object to Defendants use of these pretrial submissions to revive legal claims and contentions that the Court has previously dismissed. The majority of Defendants contentions and contested issues of fact/law relate to Defendants' counterclaims which were dismissed by the Court's April 8, 2020 Order (Doc. 92). These contentions are not valid defenses to hours worked or wages earned under the FLSA.

**Defendants' Contentions**

Amarillo Urgent Care was established on May 14, 2007. Since then, it has been operating here in Amarillo, Texas as a Walk-In and Primary Care Clinic.

Dr. Naeem Khan is licensed physician authorized by the Texas Board of Medical Examiners to practice medicine in Texas since June 6, 2003. He is the sole owner and operator of Amarillo Urgent Care.

Plaintiffs are licensed, nurse practitioners who worked as independent contractors at the clinic. Plaintiffs were responsible for timely and accurately completing all patient charting. Charting refers to the process by which the patient's care and treatment is entered into their medical record.

The clinic used two Electronic Medical Record (EMR) systems known as Practice Velocity and DocuTap. The EMR is a digital repository of all care and treatment, insurance, claim information, and billing that comprise the patient's entire medical record. The information is entered directly into the EMR system by the nurse practitioner based on their evaluation of the patient and using the notes made by the provider in the patient's physical chart. It is important that the chart be completed at the time of the visit, or immediately after, so that the information is accurate and complete. If the chart is not timely completed, a patient's health can be jeopardized as any subsequent care and treatment relies on what the patient's medical history contains.

Plaintiffs were consistently behind in their charting. Defendants reminded Plaintiffs to complete all patient charting and to catch up on any overdue charting. Because of this, patients' medical records were inaccurate and large amounts of insurance claims were rejected and unpaid.

At some point, Plaintiffs decided to take patient charts home and enter the information into the EMR system remotely. Plaintiffs claimed they worked a significant number of hours charting from home and are owed overtime. Defendants dispute that the work was completed or that the reported hours were in fact worked. Further, Plaintiffs did not record the amount of hours they worked from home. Later, Plaintiffs provided Defendants summaries of the hours worked and demanded payment of overtime.

Plaintiffs all executed a written contract with the clinic when they first started. In that agreement, Plaintiffs agreed to perform their job duties in accordance with the standards of care applicable to licensed, nurse practitioners. Plaintiffs also agreed that they would complete all patient charting in a timely manner and oversee the clinic's monthly meetings and audits of patient charting.

When the Plaintiffs left the clinic, they each had between 850 to 500 charts that were not completed or documented in a timely manner, with some of the charting being completed months after the patient first presented to the clinic. In addition, after Plaintiffs left the clinic, they disparaged the clinic and Dr. Khan and diverted patients to other providers.

Defendants contend that Plaintiffs did not worked in excess of 40 hours a week and were paid all wages. Plaintiffs claimed to have worked outside regular hours but did not keep any time records. It was not until Plaintiffs demanded Defendants pay them for any extra hours worked did they provide summaries of hours worked. These after the fact timesheets were inaccurate and appeared to show an excessive amount patient charting that was inconsistent with the amount of patient charting done while at the clinic.

However, although Defendants dispute owing Plaintiffs any wages for "off the clock" or overtime work, Defendants would pay Plaintiffs in order to avoid any issues and to help complete the overdue patient charting. Defendants also offered to pay Plaintiffs before Plaintiffs left the clinic, but Plaintiffs refused to accept payment.

Defendants contend that they engaged in good-faith efforts to comply with terms of the contract or the FLSA. At all times, Defendants acted in good faith based upon reasonable grounds for believing that such conduct was not in violation of any law nor did Defendants know or show any reckless disregard of any law.

Defendants contend that they do not owe Plaintiffs any wages and that Plaintiffs failed to mitigate their damages by refusing payment from Defendants. Defendants also contend that they are entitled to an offset for all wages paid to Plaintiffs.

Defendants contend that Plaintiffs were independent contractors or were otherwise "exempt" from the requirements of the FLSA. They further maintain that these failures constitute willful violations of the federal Fair Labor Standards Act ("FLSA").

Defendants deny the claims made by Plaintiffs and further allege Plaintiffs are not owed for any unpaid wages. Plaintiffs were not employees and are "exempt: form the FLSA. Defendants acted in good faith at all times. Defendants offered Plaintiffs payment of all alleged unpaid wages and Plaintiffs refused acceptance.

**E.      Stipulations and Uncontested Facts**

1. Plaintiff Darrell Kimbrough is an individual resident of Amarillo, Texas.

2. Plaintiff Mary Benard is an individual resident of Amarillo, Texas.

3. Plaintiff Tina Spohn-Ledford is an individual resident of Amarillo, Texas.

4. Defendant Dr. Khan is an individual residing in Amarillo, Texas.

5. Defendant Dr. Khan is a doctor licensed to practice in the State of Texas, practices in Amarillo, Texas, and is the director and CEO of AUC.

6. Defendant Amarillo Urgent Care, LLC d/b/a Amarillo Urgent Care ("AUC") is a Texas limited liability company with its principal place of business and principal office located at 1915 S. Coulter Street, Suite 200, Amarillo, Texas 79106. AUC is a walk-in urgent care center.

7. AUC is solely owned, controlled and operated by Dr. Khan.

8. In September of 2016, Kimbrough accepted a position at AUC as a Nurse Practitioner pursuant to a written contract dated September 29, 2016.

9. Kimbrough began working at AUC as a Nurse Practitioner on February 1, 2017.

10. In April of 2016, Benard accepted a position as a Nurse Practitioner at AUC pursuant to a written contract dated April 1, 2016, with an effective date June 1, 2016.

11. In September of 2017, Benard and AUC executed a subsequent contract beginning September 18, 2017 and ending on April 1, 2019.

12. AUC terminated its contract with Benard on June 26, 2018.

13. Spohn-Ledford began working at AUC as a Nurse Practitioner pursuant to a written contract dated February 1, 2017.

14. While employed by Defendants, Kimbrough was paid an hourly regular rate of $48.08 per hour.

15. While employed by Defendants, Benard was paid hourly regular rates of $44.45, $48.48, and $50.88 per hour.

16. While employed by Defendants, Spohn-Ledford was paid hourly regular rates of $48.08, $55.29, and $57.00 per hour.

17. After leaving AUC, Kimbrough sought and received a job offer with Concentra which has locations in Amarillo and Lubbock, Texas.

**F.  Contested Issues of Fact and Law**

1. The FLSA applied to Plaintiffs' employment as nurse practitioners.

2. Plaintiffs' positions as Nurse Practitioners are not exempt from the overtime requirement of the FLSA.

3. Defendant Dr. Khan is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

4. Defendants AUC and Dr. Khan are both employers within the meaning of the FLSA, 29 U.S.C. § 203(d).

5. Defendant Dr. Khan is individually liable for any violations of the FLSA if it is shown Defendants are employers under the FLSA.

6. Whether Kimbrough worked for Defendants as an employee within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

7. Whether Benard worked for Defendants as an employee within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

8. Whether Spohn-Ledford worked for Defendants as an employee within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

9. Whether in March of 2018, Spohn-Ledford was presented with an employment agreement which she did not sign.

10. Whether Spohn-Ledford's employment with AUC ended on June 22, 2018.

11. Whether Spohn-Ledford terminated her contract with AUC on June 22, 2018.

12. Whether Spohn-Ledford's contract with AUC expired on June 22, 2018, after Spohn-Ledford provided 90-days' notice of her intent not to renew.

13. Whether Benard worked for Defendants as an employee within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

14. Whether, in April of 2018, Defendants presented Benard with an employment agreement as a Nurse Practitioner with a term start date of March 31, 2019.

15. Whether Kimbrough's employment with AUC ended on January 26, 2018.

16. Whether Kimbrough terminated his contract with AUC on or about January 26, 2018.

17. Whether Kimbrough was constructively discharged from employment with AUC on or about January 26, 2018.

18. Whether Defendants objected to Concentra hiring Kimbrough in Lubbock and communicated its objection directly to Concentra.

19. Whether Concentra withdrew its job offer to Kimbrough after receipt of communication from Defendants' counsel.

20. Whether Plaintiffs worked any "off the clock" hours or overtime.

21. Whether Plaintiffs timely or accurately recorded any "off the clock" hours or overtime.

22. Whether Plaintiffs provided services in accordance with the applicable standard of care for Nurse Practitioners.

23. Whether Plaintiffs' overdue charting is compensable work under the FLSA.

24. Whether Plaintiffs violated patients' privacy rights by taking patient charts home.

25. Whether Plaintiffs violated the Health Insurance Portability Act (HIPAA) by taking medical records outside the clinic.

26. Whether Plaintiffs violated any rules or regulations of the clinic or within their contracts with AUC.

27. Whether Plaintiffs refused Defendants' offers for payment for any alleged unpaid hours worked.

28. Whether Plaintiffs can retroactively create time records to claim unpaid "off the clock" hours and overtime.

29. Whether Plaintiffs have sufficient evidence of the hours worked.

30. Whether and the extent to which Defendants failed to pay Kimbrough for all compensable hours worked as Nurse Practitioners.

31. Whether and the extent to which Defendants failed to pay Kimbrough for all overtime within each workweek while working as a Nurse Practitioner and failed to pay for all compensable hours over 40 within each workweek.

32. Whether and the extent to which Defendants failed to pay Benard for all compensable hours worked as a Nurse Practitioner.

33. Whether and the extent to which Defendants failed to pay Beanrd for all overtime within each workweek while working as a Nurse Practitioner and failed to pay for all compensable hours over 40 within each workweek.

34. Whether and the extent to which Defendants failed to pay Spohn-Ledford for all compensable hours worked as a Nurse Practitioner.

35. Whether and the extent to which Defendants failed to pay Spohn-Ledford for all overtime within each workweek while working as a Nurse Practitioner and failed to pay for all compensable hours over 40 within each workweek.

36. Whether Defendants' actions were willful within the meaning of the FLSA.

37. Whether Defendants acted in good faith and without reckless disregard of the FLSA or any law.

38. Whether as a matter of law the defense asserted in the paragraph 37, constitutes a viable defense to a claim for unpaid wages or retaliation under the FLSA.

39. Whether Plaintiffs disparaged Defendants and solicited or diverted patients to other providers.

40. Whether as a matter of law the defense asserted in the paragraph 39, constitutes a viable defense to a claim for unpaid wages or retaliation under the FLSA.

41. Whether Plaintiffs' failure to timely complete patient charts caused health insurers to deny claims for payment and caused Defendants to incur damages.

42. Whether as a matter of law the defense asserted in the paragraph 41, constitutes a viable defense to a claim for unpaid wages or retaliation under the FLSA.

43. Whether Defendants acted with a retaliatory motive by interfering with Kimbrough's job offer from Concentra.

44. Whether Kimbrough breached his non-compete agreement with AUC and caused AUC to sustain damages.

45. Whether Kimbrough suffered damages as a result of Concentra withdrawing its job offer.

46. Whether Kimbrough acted reasonably in mitigating his damages sustained as a result of Concentra withdrawing its job offer.

47. Whether Defendants acted with a retaliatory motive when reducing Spohn-Ledford's hours after Spohn-Ledford asserted her rights to regular and overtime payment under the FLSA.

48. Whether Spohn-Ledford suffered damages as a result of the reduction in hours.

49. Whether Defendants acted with a retaliatory motive when reducing Benard's hours after Benard asserted her rights to regular and overtime payment under the FLSA.

50. Whether Benard suffered damages as a result of the reduction in hours.

51. Whether Defendants acted with a retaliatory motive when terminating Benard's employment.

52. Whether Benard suffered damages as a result of her termination from AUC.

53. Whether Benard acted reasonably in mitigating his damages sustained as a result of her termination from AUC.

54. Whether Defendants acted with a retaliatory motive when filing state court lawsuits against each Plaintiff.

55. Whether Plaintiffs have suffered damages as a result of Defendants' state court lawsuits.

56. Whether Defendants failed to maintain accurate recordkeeping as required by 29 U.S.C. § 2111(c) and 29 C.F.R. §§ 516.2(a)(5)-(9), and if so, the consequences of that failure in relation to Plaintiff's burden of proof on their unpaid wage claims.

57. Whether Defendants possessed actual or constructive knowledge of Kimbrough's working at home off-the clock.

58. Whether Defendants possessed actual or constructive knowledge of Benard's working at home off-the clock.

59. Whether Defendants possessed actual or constructive knowledge of Spohn-Ledford working at home off-the clock.

60. Whether Cris Rico's knowledge of Kimbrough working at home off-the clock is imputed to Defendants.

61. Whether Cris Rico's knowledge of Benard working at home off-the clock is imputed to Defendants.

62. Whether Cris Rico's knowledge of Spohn-Ledford working at home off-the clock is imputed to Defendants.

63. Plaintiffs were subject to all of the terms and conditions set forth in their contracts with AUC.

64. Plaintiffs were subject to the policies and procedures contained in the Amarillo Urgent Care, LLC Employee Handbook.

**G.    Pending Motions**

1. Plaintiffs' Motion in Limine (due February 2, 2021).

2. Defendants' Motion in Limine (due February 2, 2021).

**H.    Probable Length of Trial**

The trial is expected to last five (5) days.

**I.    Trial Management Procedures**

The parties have generally conferred as to trial management procedures and have agreed that a demonstrative exhibit includes summaries of Plaintiffs' hours worked on the clock, summaries of Plaintiffs' time worked off the clock, summaries of hours and wages for Plaintiffs' hours worked on the clock and at home charting. Any demonstratives to be used on direct or cross should be exchanged 48 hours in advance. Witnesses, whether called in person or by deposition, should be identified seven (7) days before trial. Exhibits a party intends to use during trial should be identified and disclosed seven (7) days before trial.

Plaintiffs believe a protocol still needs to be discussed and agreed upon as to how to present the data in the electronic medical records which evidence the amount of time Plaintiffs charted at and away from the clinic.

**J.     Witness Lists**

See Plaintiffs' Witness List attached as Exhibit "A-1" and Defendants' Witness List attached as Exhibit "A-2."

**K.     Deposition Designations**

See Plaintiff's Deposition Designations attached as Exhibit "B."

**L.     Exhibit Lists**

See Plaintiff's Exhibit List attached as "C-1;" Defendants' Responses/Objections to Plaintiffs' Exhibit List attached as "C-2;" Defendants' Exhibit List attached as "C-3;" Plaintiffs' Responses/Objections to Defendants' Exhibit List attached as "C-4."

**M.     Certifications**

The undersigned counsel for each of the parties in this action hereby certify and acknowledge the following:

(1)     Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

(2)     Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

(3)     Each exhibit in the List of Exhibits herein:

    (a)     is in existence;

    (b)     is numbered; and

    (c)     has been disclosed and shown to opposing counsel.

Approved as to form and substance:

Attorney for Plaintiff:     /s/ Shawn D. Twing

Attorney for Defendant:     /s/ Casey Erick

This Joint Pre-Trial Order is hereby approved this _____ day of _____, 2021.

_____
United States District Judge